**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Telex Communications, Inc.,

Plaintiff,

v.

Sanomed Medizintechnik, GmbH,

Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 02-298 ADM/AJB

---

James M. Jorissen, Esq., and Jay A. Johnston, Esq., Oppenheimer, Wolff & Donnelly, LLP, Minneapolis, MN, appeared for and on behalf of Plaintiff.

Matthew W. Walch, Esq., Latham & Watkins, Chicago, IL, appeared for and on behalf of Defendant.

---

## I. INTRODUCTION

On July 24, 2002, the Motion to Dismiss [Docket No. 5] of Sanomed Handelsgesellschaft mbH ("Sanomed")[1] was argued before the undersigned United States District Judge. Sanomed argues the Court lacks personal jurisdiction over Sanomed. For the reasons set forth below, the Motion is denied.

## II. BACKGROUND

Sanomed is a German corporation that sells medical devices to individual customers in Germany. Coburger Decl. ¶ 3. Sanomed's principal offices are in Hamburg, Germany. Id. ¶ 2. Sanomed has no subsidiaries, branches, divisions, shareholders, offices, employees or agents for service of process in the United States of America, nor does it own, use or possess any real

[1] The named Defendant, Sanomed Medizintechnik, GmbH, is a trade name occasionally used by Sanomed. The name appears on its letterhead and business cards. Coburger Second Decl. ¶ 1.

FILED OCT 22 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

property here. Id. ¶ 4. Further, Sanomed does not direct advertising to, or make sales in, the United States. Id. ¶ 5.

Telex, a Delaware corporation with its principal place of business in Burnsville, Minnesota, manufactures, markets and sells professional audio equipment. Until March, 2002, Telex owned and operated a Hearing Instruments Group ("HIG") that designed, manufactured and marketed a broad line of hearing aids and specialty hearing products for hearing impaired individuals. Martin Aff. ¶ 3. Telex manufactured the HIG products in Rochester, Minnesota. Id.

In 1995, Telex was introduced to Sanomed by a third party, and thereafter Sanomed purchased hearing aid devices from Telex for sale to Sanomed's German customers. Id. ¶ 6. Telex's sales to Sanomed grew, and in 1997, Telex representatives visited Sanomed's offices in Hamburg, Germany, to pitch a new product line and to introduce Telex's President of the HIG to Sanomed management. Id. While no written agreement was formalized, these discussions resulted in Telex and Sanomed agreeing on a price list dated May 20, 1997. Id. Accordingly, Sanomed ordered products via facsimile and Federal Express from Germany, based on the price list, that Telex then delivered to Sanomed in Germany. Id. ¶ 7. No negotiations or contracting between the parties occurred within the United States. Id. ¶ 8. However, some employees of Sanomed have visited Telex's offices in Minnesota on a few occasions since 1995. Id. All meetings between management of the two companies took place in Germany. Id.

In 2000 and 2001, Sanomed alleges Telex refused to credit Sanomed for hearing aid devices that Sanomed had returned. Id. ¶ 9. Consequently, Sanomed stopped purchasing products from Telex in 2001. Id. Sanomed asserts no other contact with Minnesota beyond (1) the purchases from Telex between 1995 and 2001, and (2) sending certain non-management

employees to visit Telex's offices in Minnesota on courtesy visits and to receive new product information. Id. ¶ 10.

Telex argues that four factors establish the deliberate, purposeful and pervasive nature of Sanomed's contacts with the state of Minnesota:

1. Sanomed's purchase of 55,532 hearing aids from Telex between January 1998 and August 2001, specifically manufactured for Sanomed by Telex in Minnesota in accordance with a patient-specific product specification developed by Sanomed and sent to Telex in Minnesota. Erickson Aff. ¶¶ 5, 10, Exs. A, C.

2. The visit of six Sanomed representatives to Telex's Rochester, Minnesota, plant between 1994 and 1999 to receive training on "all aspects of the parties' business relationship." Holmen Aff. ¶¶ 7-8.

3. During the relevant time period, Sanomed initiated daily communications with Telex representatives in Minnesota by telephone, facsimile, e-mail, courier and regular mail, including in excess of 28 wire transfers to Telex's bank in Minnesota. Martin Aff. ¶ 5; Hendrickson Aff. ¶¶ 4, 8, Exs. A, B; Johnston Aff. Ex. 2.

4. In connection with Sanomed's purchase of hearing aids, Sanomed requested and received unsecured extensions of credit from Telex aggregating more than $10 million. Martin Aff. ¶ 13; Hendrickson Aff. ¶ 4.

Sanomed ultimately became the largest purchaser of Telex's hearing aid products, accounting for over $8,000,000 in total gross sales since June, 1998. Martin Aff. ¶ 4; Holmen Aff. ¶ 4; Erickson

Aff. Ex. B.

Telex asserts that on numerous occasions Sanomed demanded various products, product modifications and other accommodations from Telex, resulting in Telex's expenditure of substantial resources and a significant modification and tailoring of its operations. Erickson Aff. ¶¶ 12-16; Martin Aff. ¶¶ 14-18. The process for ordering the 55,532 hearing aid units and related accessories Sanomed purchased from Telex included sending purchase orders setting forth the specific model and specifications for the hearing aids, along with a mold or impression of the patient's ear as well as an audiogram demonstrating the type of hearing loss suffered by the patient. Martin Aff. ¶ 7; Erickson Aff. Ex. C. Sanomed submitted purchase orders to Telex on a daily basis between 1998 and 2001, with more than 17,000 purchase orders in 1999 alone. Martin Aff. ¶¶ 7-8. Sanomed would then send a "confirmatory manifest" via fax to Telex, who would manufacture the products to specification and ship them to Sanomed. Telex would then send a manifest informing Sanomed the product was en route. Id. ¶¶ 9-10. Subsequently, Sanomed would send status reports to Telex when the products were received. Id. ¶ 12.

Telex also provided training to Sanomed employees relating to its hearing aids, supplies and accessories. Holmen Aff. ¶ 5. Sanomed sent six employees to Minnesota for extensive training that lasted one to two months. Id. ¶¶ 7-8. The training covered all aspects of Telex's processes, including product design, manufacturing and service. Id. ¶ 8. The Sanomed representatives rotated through each HIG department[2] during full eight-hour work days. Id.

## III. DISCUSSION

A plaintiff need only make a prima facie showing of personal jurisdiction over the

[2] Specifically, the departments included the shell lab, top-plate layout, build area, seal area, test center and customer service department. Id.

defendant to survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996). In evaluating the prima facie showing, the court must view the evidence in the light most favorable to the plaintiff, and resolve all factual conflicts in the plaintiff's favor. Id.

To establish personal jurisdiction, the facts presented must satisfy the requirements of the forum state's long-arm statute, and the exercise of personal jurisdiction over the defendant must not violate due process. Id. The amenability of a foreign corporation to the jurisdiction of a federal district court is controlled by the law of the state in which the federal court sits. Moran v. Vermeer Mfg. Co., 498 F. Supp. 1274, 1278 (W.D. Mo. 1980) (citing Simpkins v. Council Mfg. Corp., 332 F.2d 733, 736 (8th Cir. 1964)). Because Minnesota's long-arm statute, Minn. Stat. § 543.19 (1988), extends jurisdiction to the maximum limit consistent with due process, this court need only evaluate whether the requirements of due process are satisfied. Wessels, Arnold & Henderson v. National Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995).

Due process mandates that a court exercise personal jurisdiction over a non-resident defendant only when the defendant has "certain minimum contacts" with the state such that summoning the defendant to the forum state does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that the defendant should "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The defendant's acts must be substantial enough to give clear notice that it would be subject to suit in the forum state. Id. However, the unilateral

activities of one claiming some relationship with the non-resident defendant are not enough to satisfy the minimum contacts requirement. Hanson v. Denckla, 357 U.S. 235, 253 (1958). In every case there must be some act by which a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. Jurisdiction is proper where the contacts proximately result from actions by the defendant that create a "substantial connection" with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The Eighth Circuit applies a five-factor test in analyzing the constitutional requirements needed for personal jurisdiction: (1) the nature and quality of defendant's contacts with the forum state, (2) quantity of contacts, (3) source and connection of the cause of action with those contacts, (4) the interest of the forum state, and (5) the convenience of the parties. Wessels, 65 F.3d at 1432. The first three factors are of primary importance, and the last two are "secondary factors." Digi-Tel, 89 F.3d at 523.

The third factor determines whether jurisdiction is specific or general. Wessels, 65 F.3d at 1432 n.4. General personal jurisdiction exists when a nonresident has such substantial contacts with the forum state that the state may exert jurisdiction over the nonresident "even for causes of action unrelated to defendant's contacts with forum state." Domtar, Inc. v. Niagara Fire Ins. Co., 533 N.W.2d 25, 30 (Minn. 1995). Specific jurisdiction is jurisdiction over causes of actions arising from or related to a defendant's actions within the forum state, while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant regardless of where the cause of action arose. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8-9 (1984). Where a forum state seeks specific personal

jurisdiction over a non-resident defendant, due process is satisfied if the defendant has "purposely directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities. Burger King, 471 U.S. at 472.

In the instant case, Minnesota does not have general jurisdiction over Sanomed; the pivotal issue is whether or not Sanomed's dealings with Telex are sufficient to establish specific jurisdiction. This determination depends on Sanomed's contacts with Minnesota in the aggregate, not individually, in light of the totality of the circumstances. Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995); Aero Sys. Eng'g v. Opron, Inc., 21 F. Supp. 2d 990, 997 (D. Minn. 1998) (citation omitted).

Although a single transaction with the forum state can be sufficient to establish personal jurisdiction over a defendant, when the quantity of contacts is minimal a court must rely on the nature and quality of the contacts. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir. 1991); Krambeer v. Eisenberg, 923 F. Supp. 1170, 1174 (D. Minn. 1996) (citing McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957)). However, where nonresidents both initiated contact with Minnesota residents and took some action that induced the residents to enter into the transaction, Minnesota courts have exercised personal jurisdiction over nonresidents based on a single transaction. See TRWL Fin. Establishment v. Select Int'l, Inc., 527 N.W.2d 573, 577 (Minn. Ct. App. 1995). Here, the quantity of Sanomed's contacts with Telex is substantial.

Where a defendant has purposefully directed his activities at forum residents, "he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 477. The factors are intended to be weighed with a mind

toward protecting against the use of jurisdictional rules to make litigation "so gravely difficult and inconvenient" that a party is unfairly at a "severe disadvantage" in comparison to his opponent. Burger King, 471 U.S. at 478.

> The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal interest in Government's foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."

Asahi Metal Indus. Co. v. Superior Court of California, Solano County, 480 U.S. 102, 115 (1987) (citation omitted). "The unique burdens placed upon a foreign defendant who must defend itself in a foreign legal system should have significant weight in assessing the reasonableness of stretching personal jurisdiction over national borders." Domtar, 533 N.W.2d at 34 (citing Asahi, 480 U.S. at 114).

Sanomed argues its contacts with Minnesota are insufficient to allow Telex to overcome this burden. Telex argues Sanomed purchased hearing aids from Telex by sending wire transfers to Minnesota, and frequently communicated by phone, facsimile and e-mail with Telex in Minnesota. The Eighth Circuit has held repeatedly that use of mail or telephone from outside a state is insufficient alone to establish minimum contacts with the forum state. See Krambeer, 923 F. Supp. at 1174 (citing Bell Paper Box, Inc. v. Trans Western Polymers, Inc., 53 F.3d 920, 923 (8th Cir. 1995); T.J. Raney & Sons, Inc. v. Security Sav. & Loan Ass'n, 749 F.2d 523, 525 (8th Cir. 1984); Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 656 (8th Cir. 1982)). Interstate communication such as use of telephone and mail is a "secondary or ancillary" factor.

Bell Paper, 53 F.3d at 923. "[T]he use of arteries of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process." Mountaire Feeds, 677 F.2d at 656 (citations omitted). Here, Sanomed's communicative contacts are continuous, consisting of close to daily contact for a period of years. Considered in conjunction with several other factors, Sanomed's communications with Telex carry appreciable weight.

Minimum contacts are "defined by the defendant's contacts with the forum *state,* not by the defendant's contacts with *residents* of the forum." West American Ins. Co. v. Westin, Inc., 337 N.W.2d 676, 679 (Minn. 1983) (citing Hanson, 357 U.S. 250-55) (emphasis in original). "Merely entering into a contract with a forum resident does not provide the requisite contacts between a (nonresident) defendant and the forum state." Bell Paper, 53 F.3d at 922 (citation omitted); see also Scullin Steel Co. v. National Ry. Utilization Corp., 676 F.2d 309, 313 (8th Cir. 1982). "This is particularly true when the nonresident defendant is a buyer, rather than a seller." Bell Paper, 53 F.3d at 922 (citation omitted). While Sanomed and Telex had no contractual relatoinship, an ongoing seller/purchaser relationship was sustained over several years.

Whether or not the nonresident defendant is the aggressor in a transaction is important to assessing personal jurisdiction. Dent-Air Inc. v. Beech Mountain Air Serv., Inc., 332 N.W.2d 904, 907-8 (Minn. 1983); KSTP-FM, LLC v. Specialized Communications, Inc., 602 N.W.2d 919, 924 (Minn. Ct. App. 1999) (holding that "where a nonresident defendant is an 'aggressor' in the transaction, it is more likely to have purposefully availed itself of the forum state's benefits and protection"). Because the parties were introduced by a third-party, neither can be said to be the initial aggressor. Sanomed pursued Telex to initiate the purchase of massive numbers of products from Telex and instigated numerous product enhancements and special services, while

Telex solicited additional business from Sanomed. While the evidence shows a balance in aggressiveness, the level of interaction and involvement between Sanomed and Telex was far greater than in the traditional arms-length mail-order seller/purchaser relationship. Sanomed has had substantial contacts with the forum, Minnesota, relating directly to the purchase of the Telex products that are the subject of dispute. In similar situations, regular correspondence and occasional visits have been held to establish personal jurisdiction. See Northrup King, 51 F.3d at 1388; Aero, 21 F. Supp. 2d at 997.

The nature and quality of the contacts here was controlled by the nature of the purchase order method of buying products. The customized nature of the hearing aid design process necessarily involves an exchange of information beyond mere order filling. Placing numerous purchase orders in Minnesota from abroad, on nearly a daily basis for a period of years, totaling millions of dollars in purchases and involving a flow of faxes and mailings as well as employee visits, simply does not reduce to random, attenuated or fortuitous contacts. See Research Medical, Inc. v. Canadian Cardiovascular Products, 917 F. Supp. 767 (D. Utah 1996). Sanomed has had numerous ongoing contacts with, and paid significant sums of money to, Telex in Minnesota. Several employees were sent to Minnesota for training. All of these contacts relate closely to the products underlying the dispute at bar. Sanomed has been sufficiently notified it could be sued in a Minnesota court, even granting it a heightened threshold because of its foreign status. Sanomed's inconvenience in coming from Germany is not so gravely difficult as to constitute a "severe disadvantage" under the circumstances of this case. Specific personal jurisdiction over Sanomed is properly asserted.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Sanomed's Motion to Dismiss [Docket No. 5] is **DENIED**.

BY THE COURT:

Date: October 22, 2002

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE